UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
OLIVER CHEE-A-TOW,

|  |  |
|---|---|
| Plaintiff, | **Case No.** _____ |
| -against- | |
| AMERICAN MANAGEMENT ASSOCIATION INT'L, NICHOLAS IGNERI, BARBARA ZUNG and, MANOS, a.k.a. ("MANNY") AVRAMIDIS in their individual and professional capacities, | **COMPLAINT** |
| Defendants. | **Jury Trial Demanded** |

-------------------------------------------------------------------X

OLIVER CHEE-A-TOW, ("Plaintiff"), by and through his attorneys, BERLINGIERI LAW, PLLC, as and for his Complaint against AMERICAN MANAGEMENT ASSOCIATION INT'L. ("AMA"), and NICHOLAS IGNERI, individually ("Igneri"), BARBARA ZUNG, ("Zung") and MANOS, a.k.a. ("MANNY") AVRAMIDIS ("Avramidis") (together, where appropriate, as "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

**NATURE OF THE CASE**

1.        This is a civil action for damages and equitable relief based upon willful violations that Defendants committed of Plaintiff's rights guaranteed to his by: (i) Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.§§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII") *et seq*.; (ii) retaliation under the Title VII, (iii) discrimination based on national origin and race under, the New York City Human Rights Law ("CHRL") § 8-107 *et seq*., New York City Admin. Code, Ch. 1 - § 8-107; (iv) retaliation under CHRL; (v) aiding and abetting discrimination under CHRL; (vi) interference with rights under CHRL; (vii) supervisory liability under CHRL 8-

1

107(13); (viii) New York Labor Law ("NYLL"), NYLL § 195(1) the requirement that employers furnish employees with a wage notice at hire containing specific categories of accurate information, (ix) any other claims(s) that can be inferred from the facts set forth herein.

2.      Plaintiff worked for Defendant AMA, a New York, New York headquartered, non-profit corporation, educational membership organization for the promotion of management, with local head-offices throughout the world with over 25,000 members in over 90 countries and with approximately 300 employees, where he was subjected to discrimination and retaliation on the basis of his national origin (Guyana) and race (West Indian) and was fired after complaining about disparate treatment based on the above protected classes.

3.      AMA failed to provide Plaintiff a pay notice pursuant to NYLL 195-1 at the time of his hire.

**JURISDICTION AND VENUE**

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York State and New York City law.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1988.

6.    Plaintiff filed timely claims with the New York City Commission of Human Rights ("CCHR") on March 31, 2016, against AMA, Zung and Igneri (CCHR Case No. M-E-N-O-1033795-E), dual filed with the Equal Employment Opportunity Commission ("EEOC") (Federal Charge No. 16F-2016-00212C), against AMA only.

7.    On November 8, 2019 the Equal Employment Opportunity Commission ("EEOC"), issued Plaintiff Notices of Right to Sue as to AMA annexed hereto as **Exhibit A**.

8.    On June 28, 2019, the CCHR issued Plaintiff a Notice of Administrative Closure for his CCHR complaint, annexed hereto as **Exhibit B**.

## PARTIES

9.    At all relevant times Plaintiff was and is a resident of the State of New York, County of Dutchess.

10.    At all relevant times   herein, Plaintiff worked for Defendants in New York and was an "employee" entitled to protection as defined by Title VII, CHRL and NYLL.

11.    At all relevant times herein, Defendant AMA was and is a New York non-profit corporation with its principal place of business located at 1601 Broadway, New York, NY 10019.

12.    At all relevant times herein, Defendant Nicholas Igneri ("Igneri") was and is a resident of the State of New York and was the AMA Vice President of Education, in that capacity, Defendant Igneri personally managed and oversaw the day-to-day operations of AMA, and was ultimately responsible for all matters with respect to Plaintiff's work with respect to terminating Plaintiff's employment.

13.    At all relevant times herein, Defendant Barbara Zung ("Zung") was and is a

resident of the State of New York and the AMA Human Resources Manager ("HR") for the New York location, in that capacity, Defendant Zung personally managed and the HR operations of AMA and was ultimately responsible for all matters with respect to terminating Plaintiff's employment.

14.    At all relevant times herein, Defendant  Manny Avramidis, ("Avramidis") was the Senior Vice President ("SVP"), Global Human Resources, ("SVP") and is now the President and Chief Executive Officer for AMA,  Defendant Avramidis personally managed and oversaw the day-to-day HR operations of AMA, and was ultimately responsible for investigating Plaintiff's complaints and approving his termination.

## BACKGROUND FACTS

15.    Defendants AMA, is a New York city based international management training and educational provider, providing services in over  90 countries with 25,000 members and a majority of its 300 plus employees working in New York city.

16.    According to its website, the world's foremost organizations rely on AMA's years of experience, expert guidance, vast award-winning learning resources and global capabilities. AMA supports the goals of individuals, organizations, and government agencies with a complete range of corporate talent transformation solutions, including public open-enrollment seminars and onsite group training, with both live and digital learning capabilities. AMA is consistently cited by industry sources as among the world's Top 20 training organizations.

17.    On July 21, 2014 Plaintiff commenced his employment as a proposal manager with Defendant AMA in New York City.

18.    Upon information and belief, Defendant became aware that Plaintiff was of Guyanese national origin and is the only person of Guyanese ever hired to work at Defendant AMA.

19.    Plaintiff was responsible for producing requests for proposals ("RFP"s) in order to obtain new business for AMA products, and was responsible for submitting RFP's to AMA's current and potential clients for new business.

20.    Within two weeks of beginning his job as a proposal manager with Defendant AMA, Plaintiff had discussions with Defendant Igneri regarding his Guyanese national origin.

21.    Specifically Defendant Igneri started to discriminate against Plaintiff based upon his Guyanese national origin.

22.    Defendant Igneri persistently inquired into Plaintiff's national origin by asking intrusive questions about Guyana.

23.    Defendant Igneri questioned Plaintiff's command of the English language; despite being reminded on more than one occasion by Plaintiff that he is a native English speaker from Guyana an English speaking country.

24.     In the next approximately year and a half that followed Defendant Igneri interacted with Plaintiff solely on the basis of "Guyanese topics."

25.     Specifically Defendant Igneri's interactions with Plaintiff were highly unusual.

26.    Defendant Igneri treated Plaintiff differently than other employees on the basis of his national origin.

27.    Throughout the course of Plaintiff's employment, Defendant Igneri would openly mention that "Oliver is from Guyana" to other AMA employees and people while introducing him without any context or reason for it.

28.    Defendant Igneri clearly expressed his discrimination and lack of tolerance for Plaintiff by saying "I don't trust you people" when referring to Guyanese people.

29.    On or about March 2015, Plaintiff complained to Defendant Igneri about his unfair and discriminatory treatment towards him, and that the focus of his interactions with Plaintiff was on Guyana-related topics.

30.    During this meeting Defendant Igneri conceded to Plaintiff that his work as a proposal manager was exceeding his expectations, however Defendant Igneri expressed to Plaintiff that he could not "trust you people" directly referring to Guyanese people.

31.    On or about May 2015, after Defendant Igneri, attended jury duty, Defendant Igneri confessed to Plaintiff that he was "glad [that he, Defendant Igneri] was not selected to be on a jury with a Guyanese woman" referring to another potential juror who was of Guyanese national origin.

32.     Defendant Igneri told Plaintiff that he "does not trust" people from Guyana.

33.    Throughout his employment, Defendant Igneri treated Plaintiff differently than other employees based upon his Guyanese national origin because Defendant Igneri would go out to lunch and have meetings based with several other AMA employees who were less productive and less reliable than Plaintiff but failed to interact or have lunch with Plaintiff because he was Guyanese.

34.    On or about July 2015, Plaintiff again complained to Defendant Igneri, about

his discriminatory practices and also complained directly to AMA's Human Resources director Defendant Zung about Defendant Igneri's discrimination, lack of tolerance for Guyanese people and how Defendant Igneri could not get past labeling Plaintiff as a "Guyanese" employee and about Defendant Igneri's own negative interpretation of Guyana.

35. On or about mid-July 2015, as an act of retaliation for Plaintiff's complaints, Defendant Igneri and Defendant Zung placed Plaintiff on a sixty day probation. Despite the fabricated performance reasons Defendant Igneri and Defendant Zung gave Plaintiff for the probation, Plaintiff successfully completed the terms of the probation in September 2015.

36. In September 2015, AMA mandated Plaintiff and members of Defendant Igneri's team to move to another floor at located in AMA's New York City office. Before the move to this floor, Plaintiff used a quiet office space cubicle, after the move, in retaliation Defendant Igneri forced Plaintiff to work at a desk in a very distracting location, next to a door that received several deliveries and foot-traffic throughout the day.

37. Plaintiff protested to Defendant Igneri and Defendant Zung about his new desk location as it was distracting and was a hindrance to Plaintiff's ability to focus at work. Defendants mandated Plaintiff to stay at this desk despite Plaintiff's requests for a quieter workspace as an act of retaliation for his prior complaints about Defendant Igneri's discriminatory conduct.

38. On January 15, 2016, Defendant Igneri, and Defendant Zung called Plaintiff to a meeting.

39. At this meeting Defendant Igneri and Defendant Zung terminated Plaintiff's employment with AMA on the basis of his national origin and in retaliation for Plaintiff's

7

prior complaints.

40.     Defendant Igneri provided Plaintiff with a reason for his termination and specifically stated "I don't trust you."  Plaintiff took Defendant Igneri's statements to mean that the reason he could not be trusted was on the sole basis of his Guyanese national origin.

41.      On January 15, 2016, Plaintiff wrote a letter to AMA's former president and CEO, Edward T. Reilly, ("Reilly") to complaint further about his disparate treatment based on his race and national origin by Igneri during his 1.5 years with AMA.

42.     Reilly failed to respond to Plaintiff.

43.     On January 26, 2016, Defendant Avramidis further retaliated against Plaintiff by failing to conduct a meaningful investigation, failing to interview or discuss the situation with Plaintiff, by discrediting Plaintiff's prior credible complaints about Defendant Igneri's harsh and discriminatory treatment as rubbish and blamed Plaintiff for his termination.

44.      On January 30, 2016, Plaintiff replied to Defendant Avramidis and again provided credible information and complaints about Defendant Igneri's discrimination and Plaintiff's reasons for disagreeing with the termination.

45.     Additionally, Defendants failed to provide Plaintiff with a wage notice at the time of his hire that accurately contained, *inter alia*, required information as proscribed by NYLL Sec. 195-1.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (AGAINST DEFENDANT AMA)

78.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

79.    Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices: It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

80.    Defendant AMA engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing race discrimination, color discrimination, sex/gender discrimination, religious discrimination and causing a hostile work environment.

81.    Defendant AMA violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII.**
**(AGAINST DEFENDANT AMA)**

81.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if the same were set forth herein fully at length.

82.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

83.    The employer Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of

the employer Defendants.

84.    The employer Defendants violated the above and Plaintiff suffered numerous damages as a result.

85.    Defendant AMA unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise his rights under the above section and discriminated and retaliated against Plaintiff by terminating Plaintiff from his employment for opposing Defendant's unlawful employment practice and attempting to exercise his rights.

## AS AN THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

86.    Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

87.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

88.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's disability.

89.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

**AS A FOURTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

90.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

91.     The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

92.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

**AS A FIFTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

93.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

94.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

95.     Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS AN SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

96.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

97.     Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

98.     Defendants violated the above section as set forth herein.

**AS A SEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

99.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

100.    Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, Agent or Independent Contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or

agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

101. Defendants violated the above section as set forth herein.

**AS A EIGHTH CAUSE OF ACTION
FOR VIOLATION OF SEC. NYLL 195-1
(AGAINST DEFENDANT AMA)**

102. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint. NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

103. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

104. As also described above, Defendants failed to furnish Plaintiff with a wage notice at the time of his hire in July 2014 that accurately contained all of the criteria that the NYLL requires.

105. On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50 for each workday after the violation occurred, up to a statutory cap of $5,000.

## **DEMAND FOR A JURY TRIAL**

110. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

     a.     A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State/City laws;

     b.     Awarding Plaintiff all back pay sustained as a result of the Defendants' conduct;

     c.     An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

     d.     All damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

     e.     Awarding Plaintiff punitive damages;

     f.     Awarding Plaintiff reasonable attorneys' fees, as well as costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

     g.     Pre-judgment and post-judgment interest, as provided by law; and

h.      Granting Plaintiff such other further relief as the Court find just and proper.

Dated: New York, New York
       January 30, 2020

Respectfully submitted,

By:    *Christopher J. Berlingieri*
      CHRISTOPHER J. BERLINGIERI, ESQ.
      (CB 1988)
      BERLINGIERI LAW, PLLC
      *Attorney for Plaintiff*
      244 Fifth Avenue, Suite F276
      New York, New York 10001
      Tel.:   (347) 766-5105
      Fax:   (914) 730-1044
      Email: cjb@nyctlaw.com

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Oliver Chee-a-tow**<br>**30 Martin Drive**<br>**Wappingers Falls, NY 12590** | From: **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16F-2016-00212** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Kevin J. Berry,**
**District Director**

November 8 2019

*(Date Mailed)*

Enclosures(s)

cc: **AMERICAN MANAGEMENT ASSOCIATION INT'L**
**Attn: Garrett Kennedy- Esq**
**1251 Avenue of the Americas**
**27th Floor**
**New York, NY 10020**

# EXHIBIT B

CITY OF NEW YORK
COMMISSION ON HUMAN RIGHTS
In The Matter of the Complaint of

OLIVER CHEE-A-TOW,

Complainant,

- against -

AMERICAN MANAGEMENT
ASSOCIATION INTERNATIONAL,
NICHOLAS IGNERI, and
BARBARA ZUNG,

Respondent.

Complaint No: M-E-NO-1033795-E
Federal Charge No: 16F-2016-00212C

NOTICE OF ADMINISTRATIVE
CLOSURE

**PLEASE TAKE NOTICE** that pursuant to § 8-113(a) of the Administrative Code of the City of New York and Rule 1-22(a) of the Rules of Practice of the City Commission on Human Rights the above-captioned case is hereby closed for administrative cause. This closure does not affect the right of aggrieved parties to file a civil action pursuant to § 8-502 of the Administrative Code of the City of New York.

Pursuant to § 8-113(f) of the Administrative Code of the City of New York and Rule 1-22(f) of the Rules of Practice a complainant or respondent may apply to the Office of the Chairperson for review of this closure. The request for review must be made in writing within thirty (30) days of service of this order.

Dated:   New York, New York

June 28, 2019

Katherine Greenberg
Assistant Commissioner
Law Enforcement Bureau
New York City Commission on Human Rights

 **Commission on Human Rights**

Law Enforcement Bureau
22 Reade Street
New York, New York 10007

*June 28, 2019*

**VIA REGULAR MAIL**

Oliver Chee-A-Tow
30 Martin Drive
Wappinger Falls, NY 12590

      Re:    ***Oliver Chee-A-Tow v. American Management Association International, Nicholas Igneri and Barbara Zung* (Complaint No: M-E-NO-1033795-E; Federal Charge No: 16F-2016-00212C)**

Dear Mr. Chee-A-Tow:

      The Law Enforcement Bureau is closing your case for administrative cause. The Law Enforcement Bureau in its discretion, may close cases for "administrative cause" when it declines to complete its investigation for reasons described in the City Human Rights Law at § 8-113(a) of the Administrative Code of the City of New York.

      WHAT DOES THIS MEAN? The closure of a case for administrative cause means that the Law Enforcement Bureau has not made a determination one way or the other as to the merits of the complaint. This also means you can now file the same claim in court or in another forum.

      RIGHT TO FILE IN COURT: You may file a civil action in court under § 8-502 of the Administrative Code of the City of New York. You must file your claim within three (3) years after the discriminatory practice occurred, however, while your claim was pending at the Commission that time period was tolled, which means that time period does not count towards the calculation of the three (3) year deadline.

      RIGHT TO APPEAL: If you do not agree with the decision to close this case, you may ask the Office of the Chairperson to review it. The request for review must be made in writing within thirty (30) days of service of this order. The request should include the case name, case number, and a brief statement that you are requesting an appeal of an administrative closure. A copy of the request must be sent to all parties to the complaint and addressed to the Office of General Counsel, New York City Commission on Human Rights, 22 Reade Street, New York, NY 10007. The Office of General Counsel will refer the request to the Office of the Chairperson.

      If you have any questions about this process, you may call the Office of the Chair at (212) 416-0128. Please note, however, that appeal requests will not be accepted by telephone and must be submitted in writing to the address indicated above within the designated time period. <u>Requests for extension of the time to file an appeal must be submitted in writing to the address listed above and will only be granted upon a showing of good cause.</u>

NOTICE TO:

*Complainant*

Oliver Chee-A-Tow
30 Martin Drive
Wappinger Falls, NY 12590

*Respondent*

American Management Association International
Attn: Garrett Kennedy Esq.,
DLA Piper LLP, 1251 Avenue of Americas,
27th Floor, New York NY 10020

Nicholas Igneri
Attn: Garrett Kennedy Esq.,
DLA Piper LLP, 1251 Avenue of Americas,
27th Floor, New York NY 10020

Barbara Zung
Attn: Garrett Kennedy Esq.,
DLA Piper LLP, 1251 Avenue of Americas,
27th Floor, New York NY 10020